# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00576-CV

**Marble Falls Independent School District, Appellant**

**v.**

**Robert Scott, Commissioner of Education of The State of Texas[1]; Thornton Keel; Donna Keel; Michael Hellrung; Donna Hellrung; William Paschall; David Womack; Natalie Kloss; Darryl Hubbell; and Amy Hubbell, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. D-1-GV-07-000916, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING**

## O P I N I O N

The Commissioner of Education issued a decision granting a petition filed under education code section 13.053 by the individual appellees, a group of parents of school-age children ("the Keels"), who sought to detach their land from appellant Marble Falls Independent School District ("Marble Falls") and annex it to Lake Travis Independent School District instead. Marble Falls filed suit in district court, seeking a declaratory judgment, trial de novo, and injunctive relief against the Commissioner's decision. Appellees filed pleas to the jurisdiction asserting that

---

[1] When this appeal was filed, Dr. Shirley Neeley was the Commissioner of Education. That offices is now held by Robert Scott. *See* Tex. R. App. P. 7.2(a) (if public officer is party in official capacity and if officeholder changes, successor is automatically substituted as party).

because Marble Falls filed its petition in district court before the Commissioner made a final ruling on Marble Falls's motion for rehearing in the administrative proceeding, Marble Falls had not exhausted its administrative remedies. The trial court agreed and granted the pleas, dismissing Marble Falls's suit for want of jurisdiction. We affirm the trial court's order.

## Background

In December 2005, the Keels filed a petition with Lake Travis pursuant to education code section 13.051, seeking to detach the Paleface Ranch territory from Marble Falls and have it annexed to Lake Travis ISD. *See* Tex. Educ. Code Ann. § 13.051 (West 2006). In January 2006, the Keels filed the same petition with Marble Falls. Marble Falls held a hearing in late February 2006 and disapproved the petition on March 27, 2006. In early March 2006, Lake Travis held a hearing on the petition the Keels filed there, and on April 3, 2006, Lake Travis approved the petition. The Keels filed an appeal from Marble Falls's decision, seeking a de novo hearing pursuant to section 13.051. Marble Falls filed a plea to the jurisdiction and answer, asserting that the two school districts were not contiguous and therefore that the petition was not proper under the education code. A hearing was held in Travis County before an administrative law judge on November 8, 2006, and the ALJ declared that Marble Falls's boundaries go to the center of the Pedernales River and that the two districts were contiguous. On April 19, 2007, the Commissioner issued a decision granting the Keels's petition. Marble Falls filed a motion for rehearing on May 11, 2007.

On May 15, 2007, before the Commissioner ruled on Marble Falls's motion for rehearing, Marble Falls filed the subject suit in district court seeking a trial de novo of the Keels's petition and a declaration that the Commissioner's findings of the districts' borders were invalid and

2

that the Commissioner lacked jurisdiction over the petition because the districts are not contiguous. Marble Falls also complained that the hearing procedures were improper and that the hearing should have been held inside Marble Falls's boundaries or at its Regional Educational Service Center. The Commissioner and the Keels both filed pleas to the jurisdiction arguing that Marble Falls's suit should be dismissed for want of jurisdiction because the district filed its petition before the Commissioner ruled on Marble Falls's motion for rehearing[2] and, therefore, Marble Falls had not exhausted its administrative remedies before filing its petition. Marble Falls responded that the hearing on the Keels's petition was not subject to the Administrative Procedure Act (APA), *see* Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2008), and that its motion for rehearing was thus not a prerequisite for obtaining judicial review. Marble Falls further argued that its suit involved matters of pure statutory construction that did not require exhaustion of remedies and that, even if exhaustion were required, once the Commissioner ruled on Marble Falls's motion for rehearing two days after the district filed its petition in district court, the cause ripened and was then properly before the trial court. Following a hearing on the appellees' pleas, the trial court signed an order granting the pleas and dismissing Marble Falls's suit for lack of jurisdiction.

## Discussion

In five issues, Marble Falls contends that its petition for judicial review was timely filed; the administrative proceeding on the Keels's petition was not subject to the APA; Marble Falls's suit involved matters of statutory construction that did not require an exhaustion of remedies; jurisdiction in the trial court became proper once the Commissioner overruled

---

[2] The Commissioner overruled Marble Falls's motion for rehearing on May 17, 2007, two days after Marble Falls filed its petition in this suit.

3

Marble Falls's motion for rehearing; and the trial court should have abated or stayed the cause pending the Commissioner's decision on the motion for rehearing rather than dismissing the suit. Following oral argument, Marble Falls filed a supplemental brief arguing that case law provides that a cause may ripen after filing and that the trial court should have given Marble Falls the opportunity to amend its pleadings. We will first discuss whether the APA applies to this suit.

1.          *Does the APA apply?*

In its first and second issues, Marble Falls argues that its suit was timely filed because under the education code, the Commissioner's review of the detachment/annexation petition was not governed by the APA.

The establishment, consolidation, abolition, detachment, or annexation of a school district is governed by a comprehensive scheme set out in chapter 13 of the education code. *See* Tex. Educ. Code Ann. §§ 13.001-.285 (West 2006). Because the Commissioner of Education is given sole authority to make an initial decision in a disputed petition to detach from one district and annex to another, *see id.* § 13.051(j), the Commissioner has exclusive jurisdiction over the dispute. *See Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006). The supreme court has held that when an agency has exclusive jurisdiction over such matters, a party seeking judicial review of the agency's decision must exhaust all available administrative remedies. *See id.* at 340. To determine the procedures by which a party petitions for detachment/annexation and, if necessary, seeks judicial review, we look to the scheme set out in the education code. *See id.* at 340, 341-42 ("administrative bodies only have the powers conferred on them by clear and express statutory language or implied powers that are necessary to carry out the Legislature's intent," and when rights are conferred only by statute, to "enforce those rights, [parties] must follow the procedures enumerated in the [agency's] rules as authorized by statute").

4

Section 13.051 provides that territory may be detached from one school district and annexed to another "district that is contiguous to the detached territory" if a majority of either (1) the registered voters in the territory, if the territory has residents, or (2) the owners of property in the territory, if the territory does not have residents, present a petition to the boards of both districts for their approval. Tex. Educ. Code Ann. § 13.051(a), (b). If one board approves the petition but the other disapproves it, an aggrieved party may appeal either district's decision to the Commissioner for de novo review under section 7.057. *Id*. § 13.051(j). Section 7.057, the education code's general appeal statute, provides that in certain cases, a person may appeal a school board's decision to the Commissioner, who generally shall hold a hearing and make a decision. *Id*. § 7.057(a), (b) (West 2006). "In conducting a hearing under this subsection, the commissioner has the same authority relating to discovery and conduct of a hearing as a hearing examiner has under Subchapter F, Chapter 21." *Id*. § 7.057(b). Further, in a detachment/annexation appeal, the Commissioner must consider "the educational interests of the students . . . and the social, economic, and education effects of the proposed boundary change." *Id.* § 13.051(j). A party who is aggrieved of the Commissioner's decision may appeal to the district court in Travis County. *Id.* § 7.057(d).

Chapter 21 governs teacher employment in general, including certification, employment contracts, and hearings related to employment disputes. *See id.* §§ 21.001-.707 (West 2006 & Supp. 2008). Under chapter 21, subchapter F, titled, "Hearings Before Hearing Examiners," a teacher may request a hearing to dispute a school district's decision to suspend him without pay or terminate his continuing contract at any time or his probationary or term contract during the contract term. *Id.* § 21.251 (West 2006). In such a hearing, section 21.255 provides that

5

the hearing examiner may issue subpoenas, administer oaths, rule on motions and the admission of evidence, and allow depositions or other discovery. *Id*. § 21.255 (West 2006). A subchapter F hearing must be held within the school district's geographical boundaries or at the district's regional education service center. *Id*. § 21.255(a). Section 21.256 provides that a subchapter F hearing must be private unless the teacher requests that it be public and allows the examiner to close an open hearing if necessary to maintain decorum or to protect a child witness. *Id*. § 21.256(a), (f) (West 2006). It further provides that the APA does not apply to a subchapter F hearing. *Id*. § 21.256(b).

Marble Falls argues that section 21.256(b) applies to all appeals under section 7.057. At the hearing on appellees' pleas to the jurisdiction, the trial court considered Marble Falls's argument and appellees' responses and observed:

> That statute [section 7.057(b)] says that the Commissioner has the procedural abilities just as an administrative judge does under Chapter 21, but Chapter 21 is dealing more with personnel. And so it's as if the legislature was saying, as an analog to what the Commissioner is able to do, the Commissioner has the procedural abilities that a hearing examiner would have, for instance, under Chapter 21, and that 21 is not governing the Commissioner's ability, is one reading of it. Why is that reading incorrect?

Marble Falls responded that "if the legislature wanted to say that, they could have." On appeal, it insists that section 21.256(b) applies to detachment/annexation proceedings and that to hold otherwise would write section 21.256(b) "out of existence."[3] We disagree.

---

[3] Marble Falls asserts that its argument is bolstered by the fact that the Commissioner's decision was signed more than sixty days after the hearing, in violation of section 2001.143 of the APA, which states that a "decision or order that may become final . . . in a contested case must be rendered not later than the 60th day after the date on which the hearing is closed," Tex. Gov't Code Ann. § 2001.143(a) (West 2008), contending that appellees should not be allowed to argue that the

Unless otherwise provided, the APA's contested-case and judicial-review procedures apply to agency-governed proceedings. *See Nueces Canyon Consol. Indep. Sch. Dist. v. Central Educ. Agency*, 917 S.W.2d 773, 776 (Tex. 1996) (appeal from detachment/annexation decision under APA); *see also* Tex. Gov't Code Ann. §§ 2001.001 (APA provides minimum standards of uniform practice and procedures for state agencies), .051-.178 (governing conduct and judicial review of contested cases); *Hartford Ins. Co. v. Crain*, 246 S.W.3d 374, 378 (Tex. App.—Austin 2008, no pet.) ("The APA sets forth general procedures for administrative contested cases."). Section 7.057 explains that in an appeal from a school district's decision to the Commissioner, the Commissioner's consideration of the appeal is to be conducted under the APA's substantial-evidence standard of review. Tex. Educ. Code Ann. § 7.057(c). It further grants the Commissioner "the same authority relating to discovery and conduct of a hearing as a hearing examiner has under Subchapter F, Chapter 21." *Id.* § 7.057(b). Those powers include the ability to permit depositions and discovery, determine the admissibility of evidence, swear in witnesses, issue subpoenas, or take certain actions to protect child witnesses or maintain decorum. *See id.* §§ 21.255, .256.

Section 7.057 does not, however, limit the Commissioner's authority to that of a hearing examiner, nor does it provide that all appeals from school board decisions are subject to the provisions governing subchapter F hearings. If every provision in subchapter F applied to the Commissioner's hearing of a detachment/annexation dispute, we would have to apply provisions that specifically mention a teacher's rights in a disciplinary hearing, require "written agreement by the

APA's time provisions apply only to Marble Falls and not equally to the Commissioner. However, the sixty-day provision is "directory" and does not impose a mandatory time limit on agency action. *See Suburban Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 362 (Tex. 1983) (construing predecessor to APA § 2001.143).

teacher," put the burden of proof on the school district, or require the Commissioner to make recommendations for a school board's consideration. *See id.* §§ 21.255, .256, .257 (West 2006).

We believe appellees and the trial court correctly characterize the interplay of section 7.057's provisions governing an appeal to the Commissioner from a district decision, subchapter F's provisions governing the hearing of a teacher's employment dispute, and the APA. Under section 13.051, an appeal from a split decision on a petition for detachment/annexation is made to the Commissioner pursuant to the provisions of section 7.057, and in conducting the hearing, the Commissioner has the authority, if he wishes, to issue subpoenas, rule on evidence, and administer oaths. The Commissioner is not, however, bound by every provision in subchapter F, many of which make no sense if applied to a detachment/annexation petition. Thus, the Commissioner has the power necessary to conduct hearings and make evidentiary decisions, but the overall hearing procedure is governed by the APA, which requires the exhaustion of administrative remedies before seeking judicial review in the courts. *See, e.g.*, *Nueces Canyon CISD*, 917 S.W.2d at 776 (applying APA to review of detachment proceeding); *Amaral-Whittenberg v. Alanis*, 123 S.W.3d 714, 719, 721 (Tex. App.—Austin 2003, no pet.) (applying APA provisions to appeal under section 7.057 from Commissioner's decision on teacher's grievance); *San Benito Consol. Indep. Sch. Dist. v. McGinnis, Lochridge & Kilgore, L.L.P.*, No. 03-96-00643-CV, 1997 Tex. App. LEXIS 4284, at *7 (Tex. App.—Austin Aug. 14, 1997, no pet.) (not designated for publication) (when law firm did not timely seek judicial review of detachment decision, district sued for malpractice; in considering district's likelihood of success, court stated, "A proceeding of this nature before the Commissioner of Education is a 'contested case.' A suit for judicial review of the Commissioner's decision is therefore governed by the Administrative Procedure Act." (citations

8

omitted)); *see also Texas Educ. Agency v. Cypress-Fairbanks I.S.D.*, 830 S.W.2d 88, 90 (Tex. 1992) (discussing predecessors to education code and APA and holding that "Education Code must be read in conjunction with the Administrative Procedure and Texas Register Act"); *Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex. 1986) ("aggrieved parties who wish to appeal the Commissioner's decision must do so in compliance with the [Term Contract Nonrenewal Act], which must be read in conjunction with APTRA § 19(b)," which provided that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review").

We hold that the APA applies to detachment/annexation proceedings and we overrule Marble Falls's first and second issues.

2.        *Failure to exhaust administrative remedies*

In its third issue, Marble Falls contends that the trial court should not have granted appellees' pleas to the jurisdiction because Marble Falls's suit raised pure questions of law that did not require exhaustion of remedies. Its petition in the trial court asked for declarations about whether the school districts are contiguous, that the Commissioner's decision related to the districts' boundaries was made without authority and that only a commissioner's court would have had the authority to make the determination made by the Commissioner, that Marble Falls's survey and field notes were unambiguous, and that the hearing before the Commissioner should have been held within Marble Falls's boundaries or at its regional service center. On appeal, Marble Falls argues that these requests for declarations under the Uniform Declaratory Judgments Act (UDJA) were pure legal questions that did not require the exhaustion of remedies. We disagree.

9

It is true that questions of statutory construction are pure questions of law. *See Lopez v. Texas Workers' Comp. Ins. Fund*, 11 S.W.3d 490, 494 (Tex. App.—2000, pet. denied). This is not such a case, however. Section 13.051 of the education code provides that the Commissioner's review of a detachment/annexation petition is de novo, and in her review, the Commissioner is to consider the students' educational interests as well as social, economic, and educational effects of the proposed change. Tex. Educ. Code Ann. § 13.051(j). The parties, who did not agree or stipulate to facts, asked the Commissioner to decide the dispute based on the facts presented by the detachment/annexation petition and the parties, and Marble Falls sought review of the Commissioner's application of the law to the evidence presented to her. There is no question about what the statute's plain language means. Instead, the questions asked of the trial court related to whether the Commissioner was correct in her determinations of the facts presented by the parties and how they fit within the plain statutory language. Further, because we have already held that the APA applies to detachment/annexation proceedings, the provision in subchapter 21 stating that a teacher's employment hearing must be held in the school district's boundaries or at its regional service center, *see id*. § 21.255(a), does not apply. Indeed, in the context of detachment and annexation, which necessarily involves two school districts, applying that provision of section 21.255(a) makes little sense and would require a factual determination of which district or service center should be used. We overrule Marble Falls's third issue on appeal.

We now turn to Marble Falls's fourth and fifth issues, which contend that because the Commissioner denied Marble Falls's motion for rehearing while the case was pending, the cause ripened during its pendency, and that the proper remedy would have been abatement to cure the problem. These issues require us to decide if and when a jurisdictional defect created by a failure

10

to exhaust administrative remedies may "ripen" and whether such jurisdictional defects would require abatement rather than dismissal.

Marble Falls argues that even if the APA does apply, case law provides that if there is a way for the dispute to ripen or for the defect to be cured, abatement or an opportunity to re-plead would be the appropriate remedies, citing to *American Motorists Insurance Co. v. Fodge*, 63 S.W.3d 801 (Tex. 2001), among others. In *Fodge*, the supreme court held:

> If a claim is not within a court's jurisdiction, and the impediment to jurisdiction cannot be removed, then it must be dismissed; but if the impediment to jurisdiction could be removed, then the court may abate proceedings to allow a reasonable opportunity for the jurisdictional problem to be cured.

*Id*. at 805.

Appellees argue instead that Marble Falls's failure to wait for a decision on its motion for rehearing is fatal to its suit. As the supreme court said in *Thomas*,

> If an administrative body has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the decision. Until the party has satisfied this exhaustion requirement, the trial court lacks subject matter jurisdiction and must dismiss those claims without prejudice to refiling.

207 S.W.3d at 340 (citations omitted). Under the APA, a timely motion for rehearing generally is a jurisdictional prerequisite to an appeal in a contested case. Tex. Gov't Code Ann. § 2001.145. A decision in a contested case is final: when the time to file a motion for rehearing expires without a motion being filed; on the date an order overruling a timely motion for rehearing is rendered; on the date a timely motion for rehearing is overruled by operation of law; when a state agency finds that a decision must have immediate effect to avoid imminent public peril; or on a date agreed upon by

11

the parties. *Id*. § 2001.144(a). To seek judicial review, the party must be "aggrieved by a final decision" and must have "exhausted all administrative remedies available." *Id.* § 2001.171; *see id.* § 2001.0145(b) (decision that becomes final upon expiration of time for rehearing when no motion for rehearing filed is not appealable).

Several cases have followed *Fodge*, holding that abatement to allow an opportunity to cure should be afforded to parties seeking judicial review of an agency's administrative determination. *See, e.g.*, *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 227-28 (Tex. 2002) (op. on reh'g); *DeSoto Wildwood Dev., Inc. v. City of Lewisville*, 184 S.W.3d 814, 827 (Tex. App.—Fort Worth 2006, no pet.); *In re Texas Mut. Ins. Co.*, 157 S.W.3d 75, 82-83 (Tex. App.—Austin 2004, orig. proceeding). However, in those cases, the appealing parties were attempting to bring common-law claims in addition to seeking judicial review of an administrative decision. *Subaru of Am.*, 84 S.W.3d at 217 (dealer sued for motor vehicle code violations, violations of Deceptive Trade Practices Act, and breach of contract and duty of good faith and fair dealing); *Fodge*, 63 S.W.3d at 802-03 (insured sought workers' compensation benefits and sued for insurance code and DTPA violations, breach of duty of good faith and fair dealing, negligence, and fraud); *DeSoto Wildwood Dev.*, 184 S.W.3d at 819 (developer sued city for return of fees, breach of contract, and takings); *In re Texas Mut. Ins.*, 157 S.W.3d at 77 (insured sued for breach of contract and negligence in relation to attempts to obtain workers' compensation policy).

In this case, Marble Falls's arguments really only attacked the Commissioner's determination of the Keels's petition and her related findings of fact and conclusions of law, and Marble Falls did not bring any common-law claims against the Commissioner or the parents. Unlike common-law claims, over which a trial court has jurisdiction by way of its general statutory and

12

constitutional powers, a trial court may hear an administrative matter only if allowed by statute. *Thomas*, 207 S.W.3d at 340. There was no common-law claim alleged over which the trial court could exercise partial jurisdiction and await Marble Falls's exhaustion of its administrative claims. Because the relevant statutes in this purely administrative case required *as jurisdictional prerequisites* to seeking judicial review that Marble Falls both file a motion for rehearing and wait for a final decision on the motion, the trial court never had jurisdiction over the case and could not therefore abate the case to allow time to cure.[4]

Nor do the cases to which Marble Falls cites for its argument that its case ripened while it was pending involve judicial review of administrative decisions under the APA. *Perry v. Del Rio* involved a challenge to congressional redistricting and held that a cause of action may ripen while the case is pending. 66 S.W.3d 239, 249-52 (Tex. 2001). Although it discussed the interplay of jurisdiction and ripeness, it did not answer whether in an administrative case, a statutorily mandated jurisdictional prerequisite to filing a suit for judicial review, the right to which is granted only by the legislature, may ripen after suit is filed. *Wallace v. Texas Department of Health* did not involve the APA and instead considered labor code provisions governing the timing of filing an employment discrimination suit. No. 03-06-00703-CV, 2007 Tex. App. LEXIS 7253, at *8-10 (Tex. App.—Austin Aug. 28, 2007, no pet.) (mem. op.). The premature filing of suit,

---

[4] The fact that the Commissioner ruled on the motion for rehearing mere days after Marble Falls filed its petition in the trial court cannot influence our decision in this case. For instance, had Marble Falls filed its petition in the trial court on the same day it filed its motion for rehearing, had the Commissioner taken much longer to decide the motion for rehearing, or had Marble Falls filed its petition shortly before filing its motion for rehearing, the situation would be less troubling. When considering provisions governing statutorily granted judicial review of administrative decisions, we must adhere strictly to the rules as set by the legislature and cannot bend them to soften their effect in one particular case while taking a hard line in other cases presenting less sympathetic facts.

especially a suit governed by multiple agency-specific statutes that must be read carefully and in conjunction to determine the exact date on which to file suit, is different than Marble Falls's failure to satisfy a statutory jurisdictional prerequisite to filing suit for judicial review. Further, as we noted in *Scott v. Presidio I.S.D.*, in 2005, after our opinion in *Wallace*, the legislature amended section 311.034 of the code construction act, concerning waiver of sovereign immunity, to instruct courts that "'[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.' A 'statutory prerequisite to a suit . . . against a governmental entity' refers to a step or condition that must be satisfied before the suit against the state can be filed."[5] No. 03-07-00319-CV, 2008 Tex. App. LEXIS 7484, at *8-9 (Tex. App.—Austin Aug. 28, 2008, no pet. h.) (quoting Tex. Gov't Code Ann. § 311.034 (West Supp. 2008)).

Instead, this case is most similar to *Lindsay v. Sterling*, in which a party sought judicial review of an administrative decision under the APA's predecessor but filed for review while her motion for rehearing was pending before the agency. 690 S.W.2d 560, 563 (Tex. 1985). In that case, the supreme court held that because the agency's decision was not final until the motion for rehearing had been overruled expressly or by operation of law, the prematurely filed petition for judicial review did not invoke the trial court's jurisdiction. *Id.* at 563-64. The court held that

---

[5] Marble Falls also argues that a premature petition for judicial review is allowable when there are conflicting statutes governing the time to file and when the appealing party risks losing the right to appeal. *See Simmons v. Texas St. Bd. of Dental Exam'rs*, 925 S.W.2d 652, 653-54 (Tex. 1996); *Heat Energy Advanced Tech., Inc. v. West Dallas Coal. for Envtl. Justice*, 962 S.W.2d 288, 290-91 (Tex. App.—Austin 1998, pet. denied). However, in this case, there is no statutory conflict that would lead Marble Falls to worry that it might lose its right to appeal. Section 7.057 does not provide a deadline for seeking judicial review, and section 21.307, which governs judicial review of a teacher's employment dispute, provides that the deadline to seek review is thirty days after the later of the dates the party receives notice of the Commissioner's decision or a timely motion for rehearing is overruled by order or operation of law. Tex. Educ. Code Ann. §§ 7.057, 21.307 (West 2006); *see also* Tex. Gov't Code Ann. § 2001.176 (West 2008) (deadline to seek judicial review runs thirty days after decision is final and appealable). Thus, the deadline for seeking judicial review could not run before Marble Falls's motion for rehearing was overruled.

14

awaiting a final decision was "a jurisdictional prerequisite to judicial review by the district court and cannot be waived." *Id.* at 563. We follow *Lindsay* and overrule Marble Falls's fourth and fifth issues on appeal.[6]

## Conclusion

In this suit for judicial review, review that is granted only by statute and only when a party has satisfied the APA's administrative process, *see Cypress-Fairbanks I.S.D.*, 830 S.W.2d at 90; *Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 831 (Tex. App.—Austin 2006, pet. denied), we hold that Marble Falls's failure to satisfy the jurisdictional prerequisite of awaiting a final decision before filing suit resulted in a lack of jurisdiction in the trial court that could not be cured. The trial court, therefore, properly granted appellees' pleas to the jurisdiction. We affirm the trial court's order of dismissal.

_____

David Puryear,  Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed:  November 14, 2008

_____

[6] *See also O'Neal v. Ector County Indep. Sch. Dist.*, 221 S.W.2d 286, 290 (Tex. App.—Eastland 2006), *aff'd*, 251 S.W.3d 50 (Tex. 2008) (discussing *American Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801 (Tex. 2001), and affirming trial court's dismissal of prematurely filed petition for judicial review, stating, "The supreme court has not elaborated on the circumstances which justify an abatement, but nothing in the court's opinion indicates those circumstances are present in this case.").