# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00574-CV

**William L. Lindig and Peggy L. Lindig, Appellants**

**v.**

**City of Johnson City, David Dockery, Individually and in His Capacity as
City Manager/City Administrator of the City of Johnson City, Peter McKinney,
Individually and in His Capacity as Building Official of the City of Johnson City,
Rhonda Stell, in Her Capacity as Member of Board of Adjustment of the
City of Johnson City, James Stevenson, in His Capacity as Member of Board of
Adjustment of the City of Johnson City, Ralph Moss, in His Capacity as Member of
Board of Adjustment of the City of Johnson City, and Alice Duncan, in Her
Capacity as Member of Board of Adjustment of the City of Johnson City, Appellees**

### FROM THE DISTRICT COURT OF BLANCO COUNTY, 424TH JUDICIAL DISTRICT
### NO. CV06530, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

## MEMORANDUM OPINION

Appellee City of Johnson City sued appellants William L. Lindig and Peggy L. Lindig seeking a temporary injunction and civil penalties after the Lindigs continued construction on their Blanco County property without obtaining a building permit from the City. The Lindigs counterclaimed against the City, the Board of Adjustment, and various City officials challenging the validity of the building-permit-fee ordinance and seeking damages against the City and the City officials for an unconstitutional taking and civil conspiracy. The district court dismissed the Lindigs' claims against the City and the individual defendants for lack of subject-matter jurisdiction. We will affirm the trial court's order of dismissal in part and reverse and remand in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 2007, the Lindigs applied for a permit in order to conduct "residential remodeling" construction work on their residence. According to William Lindig, he filled out the application at City Hall and was told by the City secretary that he could begin the project. The following month, Peter McKinney, the City's Building Official, acted on the Lindigs' application and set the building permit fee at $1,000, based on his determination that the project should be treated as "new construction" in accordance with section 06-015 of the City's Code of Ordinances. The Lindigs refused to pay the fee, and the City issued a stop-work order.

*City's District Court Suit*

The City then filed suit in Blanco County district court seeking a temporary restraining order and temporary and permanent injunctive relief against further construction, alleging that the Lindigs had refused to obey the City's orders to cease all work until a building permit was issued. *See* Tex. Loc. Gov't Code Ann. §§ 54.012(1) (municipality may bring civil action for enforcement of ordinance relating to materials or methods used to construct buildings), .016 (injunctive relief) (West 2008). The City also sought civil penalties for the Lindigs' violation of the stop-work order. *See id.* § 54.017 (West 2008). The Lindigs answered by alleging that the City was "barred as a matter of law from enforcing the Code provisions by the principles of estoppel and waiver. Further, the City has waived enforcement of the building permit by failing to enforce other similar violations of which the City Officials have knowledge or should have knowledge." The Lindigs also counterclaimed against the City, asserting that they were entitled to the following relief:

2

- Under the Texas Uniform Declaratory Judgment Act, *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008), declarations that (i) the City's building-fee-permit ordinance is invalid, void, unenforceable, and unconstitutional as it relates to permit fees charged for residential remodel construction jobs, including the Lindig project; (ii) the City must refund all residential remodel permit fees illegally procured under the void ordinances; and (iii) the City's stop-work order was illegal, void, and unenforceable;

- Temporary and permanent injunctions restraining the City from charging and procuring illegal building permit fees for residential remodel projects, performing future illegal acts, and refusing to allow the Lindigs to continue construction at their residence;

- Damages against Peter McKinney and David Dockery in their individual capacities for fraud and "civil conspiracy to unlawfully procure thousands of dollars in building permit fees for residential remodels while knowing that there is absolutely no legal basis to charge the fees," including "punitive and exemplary damages" based on McKinney and Dockery's "gross misconduct," "fraudulent mispresentations of fact and law to the LINDIGS which, in fact, are not true," and "gross negligence, malice and, at the very least, bad faith in unlawfully demanding and procuring these fees";

- Compensation for the City's unlawful taking of their property; and

- Attorney's fees, court costs, and pre- and post-judgment interest.

In support of their claims for affirmative relief, the Lindigs alleged that Dockery had testified that the City does not have a building permit fee schedule for residential repair or remodel projects and yet he and other City officials knowingly charged the Lindigs and other City residents fees for such projects.

Pursuant to an agreement between the parties, the district court enjoined further construction work while the Lindigs pursued their counterclaims against the City. In response to the Lindigs' counter-petition, the City filed special exceptions asserting that the Lindigs lacked standing to seek judicial review of the validity of the building code, arguing that only the Attorney General

3

could pursue such a challenge through a quo warranto proceeding, and that the Lindigs had failed to exhaust their administrative remedies by appealing the Building Official's decision to the City's Board of Adjustment.[1] In addition, the City filed a plea to the jurisdiction, further arguing that the Lindigs' failure to exhaust their administrative remedies deprived the court of subject-matter jurisdiction over their counterclaims. The Lindigs did not file a response to the City's plea.

*Lindigs' County Court Suit*

After the City filed its plea to the jurisdiction in the district court, the Lindigs filed a verified petition for writ of certiorari in the county court of Blanco County appealing the Board of Adjustment's decision. *See* Tex. Loc. Gov't Code Ann. § 211.011(a)(1) (West 2008) (providing that any person aggrieved by decision of board of adjustment may file verified petition in district or county court stating that decision is illegal); *see also id.* § 211.011(c) (providing that court may grant writ of certiorari directed to board to review its decision). The Lindigs' petition for writ of certiorari stated that (1) the Board's stop-work order was invalid on its face because it did not put the Lindigs on notice of the alleged proscribed conduct; (2) the Board's determination that the Lindigs owed $1,000 was based on its erroneous interpretation of the City's building permit fee schedule; (3) the ordinance establishing the fee schedule was overly broad, vague, ambiguous, and gave unbridled administrative discretion to City officials and employees; and (4) "[i]n the alternative," "the City [wa]s barred as a matter of law from enforcing the Ordinance provisions by the principles of estoppel and waiver."

---

[1] The record does not indicate whether the trial court ever ruled on the City's special exceptions.

4

Combined with their petition for writ of certiorari, the Lindigs also filed in the county court their "Original Petition, Petition for Declaratory Judgment, & Application for Restraining Order" against the Board of Adjustment and Board Members.[2] The Lindigs' petition asserted the same claims against the Board and Board Members that they had raised in their counter-petition against the City in the district court. As a result, the parties had pending litigation in both district and county court regarding the same dispute.

The Board of Adjustment and the Board Members, all of whom were sued in their official capacity, filed a motion to dismiss the Lindigs' county court suit. The motion to dismiss asserted that: (1) the Lindigs' claim for declaratory relief regarding the legality of the city ordinances, takings claim, and request for attorney's fees were not yet ripe because the appeal of the Board of Adjustment's decision was still pending; (2) the Lindigs' suit against the members of the Board of Adjustment in their official capacity involved the same claims that the Lindigs had raised against the Board of Adjustment itself, and so the individually named defendant members of the Board should be dismissed; (3) the Lindigs failed to plead that they had suffered a particularized injury to give them standing to challenge the building permit fees or seek a general "reimbursement" of all fees paid by Johnson City residents; (4) the Lindigs' failure to pay under protest the fee assessed against them deprived them of standing to attack the validity of the ordinance; and (5) the

---

[2] As authorized by statute, the City Council of Johnson City acts as the Board of Adjustment. *See* Tex. Loc. Gov't Code Ann. § 211.008(g) (West 2008) ("The governing body of a Type A general-law municipality by ordinance may grant the members of the governing body the authority to act as a board of adjustment under this chapter.").

Lindigs' pleadings were insufficient to support an estoppel or waiver claim against the City.[3] With respect to the Lindigs' petition for writ of certiorari, the Board asserted that, pursuant to section 211.011 of the local government code, the only issue properly before the court was the legality of the Board's order, and therefore the court should not consider any of the Lindigs' other causes of action until there was a final judgment determining the order's legality.

The county court subsequently granted the Lindigs' petition for writ of certiorari, directing the Board to review and return its decision within ten days of the date of the order. *See id.* § 211.011 ("On the presentation of the petition, the court may grant a writ of certiorari directed to the board to review the board's decision."). The record shows that the Board heard the Lindigs' appeal on July 18, 2008, and, following a public hearing, determined that the decision of the Building Official should be upheld.

*Consolidation of District and County Court Suits*

On the City's motion, the district court and county court suits were then consolidated, such that both the City's plea to the jurisdiction and the Board's motion to dismiss were pending before the district court. Following the consolidation, the district court dismissed for lack of jurisdiction the Lindigs' claims (1) against Dockery and McKinney; (2) "against the City of Johnson

---

[3] A motion to dismiss based on the absence of subject-matter jurisdiction is the functional equivalent to a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. *Lacy v. Bassett*, 132 S.W.3d 119, 122 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)).

City alleging an unlawful or illegal tax or fee"; (3) "against the City of Johnson City alleging estoppel and waiver"; and (4) "against Rhonda Stell, James Stevenson, Ralph Moss and Alice Duncan."[4]

The Lindigs perfected an interlocutory appeal from the district court's order of dismissal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008). On appeal, the Lindigs argue that the trial court erred by dismissing their challenges to the validity of the City's ordinance, despite their failure to pay the permit fee, because the City "opened the door" for such an attack when it filed suit against the Lindigs for injunctive relief. They further assert that requiring them to pay the permit fee in order to have standing to challenge the fee's validity violates the Open

---

[4] In support of its order of dismissal, the trial court made the following findings:

1. Defendants-Counter Plaintiffs have challenged the City of Johnson City building permit fees, but have not paid such fees in this case, and do not have standing to seek affirmative relief against the City of Johnson City, Texas, David Dockery in his individual and official capacity, Peter McKinney in his individual and official capacity, [and the members of the Board of Adjustment, in their official capacities].

2. Defendants-Counter Plaintiffs have sued David Dockery and Peter McKinney in their official capacities. A suit against a public official in his or her official capacity is in actuality a suit against the governmental entity that the public official represents; that such claims are duplicative and do not create a case and controversy; and that this Court does not have jurisdiction over such claims.

   Defendants-Counter Plaintiffs have also sued David Dockery and Peter McKinney in their individual capacities, but it is clear from the Defendants' pleadings that the acts complained of were taken in their official capacities.

3. Defendants-Counter Plaintiffs have sued Rhonda Stell, James Stevenson, Ralph Moss and Alice Duncan in their official capacities. A suit against a public official in his or her official capacity is in actuality a suit against the governmental entity that the public official represents; that such claims are duplicative and do not create a case and controversy; and that this Court does not have jurisdiction over such claims.

7

Courts provision of the Texas Constitution, that the court had jurisdiction to hear their claims under the UDJA, and that they properly invoked the court's jurisdiction by filing their petition for writ of certiorari. Finally, the Lindigs urge that the trial court erred in dismissing their remaining claims against the City and the individual officials for lack of jurisdiction because the trial court's decision amounted to a ruling "on the merits" rather than one regarding jurisdiction.

## STANDARD OF REVIEW

Whether a court has subject-matter jurisdiction is a question of law subject to de novo review. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). The subject-matter jurisdiction of a trial court may be challenged through a plea to the jurisdiction, as the City has done in this case. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). In deciding a plea to the jurisdiction that challenges only the plaintiffs' pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* at 226. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.*

The appellees challenged the trial court's subject-matter jurisdiction on several bases, including standing, ripeness, and failure to exhaust administrative remedies. Standing is a component of subject-matter jurisdiction that can be raised at any time and cannot be waived. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993). The general test for standing requires that there be a real controversy between the parties that can be determined by the judicial declaration sought. *Id.* at 446. There must be a restriction of the plaintiff's rights—not those of another. *Bailey v. City of Austin*, 972 S.W.2d 180, 184-85 (Tex. App.—Austin 1998, pet. denied).

8

In reviewing a trial court's order on a motion to dismiss for want of standing, we consider the issue as we would in a plea to the jurisdiction, construing the pleadings in favor of the plaintiff. *See Brown v. Todd*, 53 S.W.3d 297, 305 n.3 (Tex. 2001); *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) (For purposes of ruling on a motion to dismiss for want of standing, . . . reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

Ripeness is a threshold issue that implicates subject-matter jurisdiction. *Perry v. Del Rio*, 66 S.W.3d 239, 259 (Tex. 2001) (citing *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998)). The ripeness doctrine examines when claims may be brought and asks whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote. *Id.* (citing *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-52 (Tex. 2000)). The ripeness doctrine holds that if a plaintiff's injury is not concrete, but depends on contingent or hypothetical facts, the trial court does not have jurisdiction to hear the dispute. *Gibson*, 22 S.W.3d at 852. To determine if the plaintiff's claims were ripe, the appellate court must look to the facts and evidence existing when the suit was filed. *Id.* at 851-52.

The requirement that administrative remedies must be exhausted represents the legislature's desire that administrative agencies initially determine disputed questions of fact and law in certain situations. *Essenburg v. Dallas County*, 988 S.W.2d 188, 189 (Tex. 1998). When an agency has exclusive jurisdiction, courts have no subject-matter jurisdiction until the claimant has exhausted all administrative remedies within the agency. *See In re Entergy Corp.*, 142 S.W.3d 316, 321-22 (Tex. 2004). Whether the legislature has granted exclusive jurisdiction to an agency is a

matter of statutory interpretation, which we review de novo. *See Employees Retirement Sys. v. Duenez*, ___ S.W.3d ___, No. 07-0410, 2009 Tex. LEXIS 477, at *31 (Tex. July 3, 2009).

## DISCUSSION

By their first issue, the Lindigs urge that the trial court erred in dismissing their challenge to the validity of the City's building-permit ordinance because they had standing to bring their claim, despite not having paid the required fee. In so arguing, they assert that (1) the City invited jurisdiction over their counterclaims when it filed its lawsuit against them; (2) they demonstrated a particularized injury distinct from the general public; (3) requiring them to pay the fee before challenging the ordinance violates the Open Courts provision of the Texas Constitution; (4) the Uniform Declaratory Judgments Act enables them to challenge the validity of the ordinance and assert their counterclaims against the City; and (5) they invoked the trial court's jurisdiction by filing their petition for writ of certiorari pursuant to section 211.011 of the local government code. By their second issue, the Lindigs argue that the trial court erred in dismissing their claims "asserting estoppel, waiver, illegal tax or fee, and regulatory taking against the City, and asserting individual claims against David Dockery, Peter McKinney, Rhonda Stell, James Stevenson, Ralph Moss and Alice Duncan" because it "made a ruling on the merits without hearing evidence on the merits." They maintain that it was error for the trial court to make a ruling that "essentially says that the trial court does not have jurisdiction because the Lindigs' case does not have merit."

10

***The Lindigs' UDJA Claims Against the City***

The trial court dismissed for lack of subject-matter jurisdiction the Lindigs' claims against the City "alleging an unlawful or illegal tax or fee." The Lindigs sought an injunction and declarations under the UDJA that the City's building-permit-fee ordinance was "invalid, void, unenforceable, and unconstitutional"—with respect to all residential remodel construction jobs in the City *and* as applied to the Lindigs' project—and that the City must refund all fees illegally procured under the void ordinance. The UDJA provides that a person whose rights, status, or other legal relations are affected by a statute may have determined any question of construction or validity arising under the statute and may obtain a declaration of rights, status, or other legal relations thereunder. Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2008). It does not, however, "extend a trial court's jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court." *IT-Davy*, 74 S.W.3d at 855. A declaratory judgment is appropriate only when there is a justiciable controversy about the rights and status of the parties, and the declaration would resolve the controversy. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995).

Before we address the trial court's analysis of the Lindigs' standing to bring these claims under the UDJA, we first examine our jurisdiction to hear this appeal. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (stating that appellate court has duty to assess its own jurisdiction sua sponte). Apart from generally asserting that the fee is unconstitutional, the Lindigs' counter-petition did not identify any specific constitutional violation or otherwise indicate why the ordinance is unconstitutional "as it relates to permit fees charged for residential remodel construction jobs, including the LINDIG project." The UDJA provides that "[i]n any proceeding that involves

11

the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard." Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (West 2008). Failure to do so deprives the trial court, and therefore this Court, of jurisdiction. *See Commerce Indep. Sch. Dist. v. Hampton*, 577 S.W.2d 740, 741 (Tex. Civ. App.—Eastland 1979, no writ); *Commissioners Court v. Peoples Nat'l Util. Co.*, 538 S.W.2d 228, 229 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); *see also In re C.M.D.*, No. 14-08-00113-CV, 2009 Tex. App. LEXIS 4785, at *5 (Tex. App.—Houston [14th Dist.] June 25, 2009, no pet. h.); *McPherson v. City of Lake Ransom Canyon*, No. 07-02-0057-CV, 2003 Tex. App. LEXIS 2534, at *4-5 (Tex. App.—Amarillo Mar. 26, 2003, pet. denied) (mem. op.).

The record contains no indication that the Lindigs served the Attorney General with a copy of their petition, as required by section 37.006(b). Therefore, neither the trial court nor this Court has jurisdiction over the Lindigs' claim for declaratory relief regarding the constitutionality of the City's ordinance. *See Hampton*, 577 S.W.2d at 741; *Commissioners Court*, 538 S.W.2d at 229.

Turning to the Lindigs' remaining challenges to the validity of the ordinance and the City's authority to interpret its building permit fee to apply to "residential remodel construction projects," we conclude that the trial court correctly determined that the Lindigs lacked standing to (1) enjoin the City from charging building permit fees for all residential remodel construction projects, (2) seek a declaration that the City's ordinance is invalid as applied to every residential remodel project in the City, and (3) seek reimbursement of all building fees previously assessed by

12

the City. Unless standing is conferred by statute, the common-law rule in Texas is that a person seeking to enjoin the actions of a governmental body must plead and prove that he has suffered a "special injury," *i.e.*, he must allege and show how he has been damaged or injured other than as a member of the general public. *Scott v. Board of Adjustment*, 405 S.W.2d 55, 56 (Tex. 1966); *Walker v. City of Georgetown*, 86 S.W.3d 249, 253 (Tex. App.—Austin 2002, pet. denied). Specifically, a plaintiff has standing to sue if: (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) there is a direct relationship between the alleged injury and the claim to be adjudicated; (3) the plaintiff has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; or (5) the plaintiff is an appropriate party to assert the public interest in the matter as well as his own interest. *Walker*, 86 S.W.3d at 253 (citing *El Paso Cmty. Partners v. B&G/Sunrise Joint Venture*, 24 S.W.3d 620, 624 (Tex. App.—Austin 2000, no pet.)).

Here, the Lindigs have not argued that the City's purported practice of charging illegal fees to other citizens has resulted in any injury to them personally. Nor have they shown that they have a personal stake in the reimbursement of all unlawfully procured fees collected by the City or that they are the appropriate parties to assert such a challenge on behalf of all City residents who have been assessed an unlawful building permit fee. *Cf. City of Arlington v. Scalf*, 117 S.W.3d 345, 346-47 (Tex. App.—Fort Worth 2003, pet. denied) (plaintiff lacked standing to challenge municipal street-maintenance fee on behalf of proposed class of persons who had been billed for street

13

maintenance services). These claims for declaratory relief were thus properly dismissed on the basis that the Lindigs lacked standing to assert them.

We now turn to the claims that the Lindigs brought resulting from the City's application of the building permit fee against them. According to their pleadings, the Lindigs have been assessed an illegal fee of $1,000 based on an invalid ordinance, were ordered to stop work on their residence as a result of the City's erroneous interpretation of its ordinance, and may incur further civil penalties. Such injuries are sufficiently concrete and particularized to confer standing on the Lindigs. The City asserts, however, that the Lindigs' failure to pay the building permit fee deprived them of standing to challenge the validity of the fee ordinance under the UDJA.

While it is true with respect to many taxes and fees that plaintiffs are required to pay the tax or fee under protest before bringing suit to challenge its validity, such procedures are mandatory only where expressly required by statute. *See Dallas County Cmty. College Dist. v. Bolton*, 185 S.W.3d 868, 879 (Tex. 2005) (citing Tex. Tax Code Ann. §§ 31.115 (requiring protest payment of ad valorem property taxes), 112.051 (requiring protest payment in order to challenge state taxes and fees collected by Comptroller), 403.202 (requiring protest payment of occupation, excise, gross receipts, franchise, license, or privilege taxes or fees in order to contend that tax or fee is illegal) (West 2008)). As with the building permit fees at issue in the case at bar, the student services fees charged by the junior colleges in *Bolton* were not subject to any mandatory statutory protest provisions. *See id.* at 879-80. Accordingly, the supreme court noted that the class of students protesting the legality of the fees had several remedies at their disposal: "they could file a declaratory judgment action contesting the fee's legality, or they could seek to enjoin collection of

14

the fees." *Id.* at 881 n.9 (citing *Shaw v. Phillips Crane & Rigging, Inc.*, 636 S.W.2d 186, 188 (Tex. 1982) (noting that taxpayer "may bring a suit for declaratory judgment to determine . . . the legality of the taxes" and "may bring a suit to enjoin the collection of the alleged illegal taxes pending a hearing on the legality of same")). The City failed to establish that the statutory scheme under which the Lindigs' claims arise requires them to pay the fees under protest and, thus, that they lacked standing on this basis.[5]

The City further argued that the Lindigs' challenges are barred because they can only have been raised pursuant to the statutory review procedures set forth in section 211.011 of the local government code. Section 211.011 permits "a person aggrieved by a decision of the board" to "present to a district court, county court, or county court at law a verified petition stating that the decision of the board of adjustment is illegal in whole or in part and specifying the grounds of the illegality." Tex. Loc. Gov't Code Ann. § 211.011(a)(1). This is the procedure that the legislature "has expressly provided . . . for challenging an action taken by a city's zoning board of adjustment." *City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 249 (Tex. App.—San Antonio 2006, pet. denied) (citing *West Tex. Water Refiners, Inc. v. S&B Beverage Co.*, 915 S.W.2d 623, 626 (Tex. App.—El Paso 1996, no writ)). "This certiorari requirement is an administrative remedy provided by the Texas Local Government Code, which must be exhausted before board decisions may be brought before the courts." *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.). "A suit not brought pursuant to the statutory provisions

---

[5] Because we hold that the Lindigs were not required to pay the fee in order to have standing to challenge its validity, we need not reach their argument that the trial court's order amounts to a violation of the Open Courts provision of the Texas Constitution.

is an impermissible collateral attack." *El Dorado Amusement*, 195 S.W.3d at 250; *see Winn v. City of Irving*, 770 S.W.2d 10, 11 (Tex. App.—Dallas 1989, no writ).

In this case, the parties dispute whether the Lindigs have exhausted their administrative remedies as required by section 211.011. The City asserts that the Lindigs' appeal of the Board of Adjustment's decision is "currently pending" and that their failure to exhaust is a jurisdictional bar to all of their counterclaims against the City. The Lindigs maintain, however, and we agree, that the record shows the Board's decision is now final—although, at the time the Lindigs originally filed their counter-petition against the City challenging the validity of the ordinance and the assessment of the permit fee, they had not yet filed their petition for writ of certiorari and the Board had not yet reviewed its decision under section 211.011. In essence, the Lindigs' position on appeal is that even if filing the petition for writ of certiorari was necessary to confer jurisdiction over their counterclaims against the City, any jurisdictional defect has since been cured by their subsequent exhaustion per the writ of certiorari procedure.

As this Court recently explained in *Marble Falls Independent School District v. Scott*, 275 S.W.3d 558 (Tex. App.—Austin 2008, pet. filed), there are some cases in which courts have recognized that a jurisdictional defect created by a failure to exhaust administrative remedies may be cured rather than require dismissal for lack of subject-matter jurisdiction. *Id.* at 565. We noted that in such cases, "the appealing parties were attempting to bring common-law claims," over which trial courts have jurisdiction by way of their general statutory and constitutional powers, "in addition to seeking judicial review of an administrative decision." *Id.* at 566. On the other hand, as in *Marble Falls*, the failure to allege a common-law claim over which the trial court could exercise

16

partial jurisdiction means that the trial court never acquires jurisdiction over the case and cannot therefore abate to allow time to cure. *Id.*

In the case at bar, the Lindigs alleged common-law claims for fraud, civil conspiracy, and an unconstitutional taking in addition to their requests for declaratory and injunctive relief regarding the validity of the Board's decision. The Lindigs were thus entitled to cure any jurisdictional defect presented by their failure to file their petition for writ of certiorari and obtain a final Board decision before filing their counterclaims against the City. They have done so, and since their counterclaims against the City were consolidated with their suit for judicial review of the Board's decision, the district court has subject-matter jurisdiction over the Lindigs' challenges to the validity and enforceability of the ordinance as applied to them—with the exceptions discussed above regarding their claim that the ordinance is unconstitutional and their facial challenges to the validity of the ordinance, which they do not have standing to assert.[6] With these caveats, we sustain the Lindigs' first issue regarding the dismissal of their claims against the City alleging an unlawful tax or fee as applied to them.

---

[6] Further, some of the relief they requested under the UDJA exceeded the scope of the issue to be decided by the Board—whether its decision to assess the Lindigs a building permit fee was legal—and challenged the City's authority to assess permit fees for residential remodeling projects. *See City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 250 (Tex. App.—San Antonio 2006, pet. denied) (only question that may be raised by petition for writ of certiorari under section 211.011 is legality of board's order); *cf. Mitz v. Texas St. Bd. of Veterinary Med. Exam'rs*, 278 S.W.3d 17, 22-24 (Tex. App.—Austin 2008, pet. filed) (acknowledging that while Veterinary Board had jurisdiction to administer Veterinary Licensing Act, legislature did not intend it to resolve disputes concerning validity of Act and holding that parties bringing such challenge did not need to exhaust administrative remedies before Board). The subset of claims unrelated to the legality of the Board's final decision is not intended to be resolved through the Board's administrative processes and thus does not fall within the exclusive jurisdiction of the Board. As a result, these challenges could not be jurisdictionally barred as a result of a failure to exhaust the section 211.011 procedure.

17

***The Lindigs' Takings Claim***

We also construe the trial court's order as having dismissed for lack of standing the Lindigs' claims for an unconstitutional taking based on the City's issuance of the stop-work order, as well as the Lindigs' request for declaratory relief that the stop-work order constituted an unlawful taking. Article I, section 17 of the Texas Constitution states, "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made." Tex. Const. art. I, § 17. To recover on an inverse condemnation claim, a plaintiff must establish that (1) the State or other governmental entity intentionally performed certain acts, (2) that resulted in the taking, damaging, or destruction of the owner's property, (3) for public use. *General Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001); *Steele v. City of Houston*, 603 S.W.2d 786, 788-92 (Tex. 1980).

The City's only challenge to the trial court's jurisdiction over the Lindigs' takings claim was that it was not ripe for adjudication because appeal had not been taken to the Board, pursuant to section 211.011 of the local government. As the City argued to the trial court, "in order for a regulatory takings claim to be ripe, there must be a final decision regarding the application of the regulations to the property at issue." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 (Tex. 1998) (citing *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 (1997); *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985)). The City maintains that because the appeal of the decision of the Board is "currently pending," the trial court correctly found that it had no jurisdiction to entertain the takings claim.

18

Several of our sister courts have expressly rejected the City's argument, holding that, "[w]here a constitutional taking issue is brought, it can be considered even though other claims are dismissed for failure to exhaust administrative remedies under Section 211.011 of the Texas Government Code." *Lamar Corp.*, 270 S.W.3d at 614-15 (citing *Centeno v. City of Alamo Heights*, No. 04-00-00546-CV, 2001 Tex. App. LEXIS 3141, at *3 (Tex. App.—San Antonio May 16, 2001, no pet.) (not designated for publication); *Hitchcock v. Board of Trustees, Cypress-Fairbanks Indep. Sch. Dist.*, 232 S.W.3d 208, 219 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). This view is especially persuasive since, under the unique review procedures of section 211.011, the only question that may be raised by a petition for writ of certiorari is the legality of the board's order. *City of San Angelo v. Boehme Bakery*, 190 S.W.2d 67, 70 (Tex. 1945) (construing prior statute); *El Dorado Amusement Co.*, 195 S.W.3d at 250; *Board of Adjustment v. Amelang*, 737 S.W.2d 405, 406 (Tex. App.—Houston [14th Dist.] 1987, writ denied).

Still, assuming without deciding that the Lindigs were required to exhaust their administrative remedies under the local government code in order to bring a takings claim against the City, the record shows that they have done so. As the Texas Supreme Court has acknowledged, the procedures for challenging a board of adjustment's decision under section 211.011 are "rather unique." *Tellez v. City of Soccoro*, 226 S.W.3d 413, 414 (Tex. 2007). Section 211.011 requires that a person aggrieved by a board's decision present to a district court, county court, or county court at law a verified petition stating that the decision is illegal and stating the basis for the illegality. *See* Tex. Loc. Gov't Code Ann. § 211.011(a)(1). The petition must be presented within ten days after the date the decision is filed in the board's office. *Id.* § 211.011(b). On presentation of the

petition, the court may then grant a writ of certiorari directed to the board to review its decision, *id.* § 211.011(c), and, if granted, the board must make a verified return and state the pertinent and material facts that show the grounds of the decision under appeal, *id.* § 211.011(d).

According to the supreme court, "[o]nce a party files a petition within ten (10) days after a zoning board decision, the court has subject matter jurisdiction to hear and determine a claim." *Davis v. Zoning Bd. of Adjustment*, 865 S.W.2d 941, 942 & n.3 (Tex. 1993) (disapproving lower court's decision to extent it held that trial court's jurisdiction depended on service and return of writ); *see Tellez*, 226 S.W.3d at 414. In this case, the Lindigs not only filed their verified petition for writ of certiorari, but the record establishes that the writ was granted *and* the Board finalized its decision, upholding the Building Official's decision and affirming the assessment of the $1,000 permit fee. The Lindigs have thus complied with the procedures established under section 211.011 for challenging the Board's decision and conferred jurisdiction on the trial court to bring their takings claims. *See Davis*, 865 S.W.2d at 942.[7] We sustain the Lindigs' first issue with respect to their takings claims.

_____

[7] To the extent that the City is arguing that the Lindigs' claims were not ripe when they filed their original petition against the Board because their application for writ of certiorari was filed concurrently, we reject this argument as well. In *Perry v. Del Rio*, 66 S.W.3d 239 (Tex. 2001), the Texas Supreme Court held that a claim's lack of ripeness when suit is filed is not a jurisdictional infirmity requiring dismissal if, as here, the case matures during the pendency of the suit. *See Perry*, 66 S.W.3d at 256 (indicating that ripeness should be determined at time of adjudication, based on all information available to court, including intervening events).

***Estoppel and Waiver***

The trial court also dismissed for lack of jurisdiction the Lindigs' "claims against the City of Johnson City alleging estoppel and waiver." In their answer to the City's original petition for injunctive relief and civil penalties, the Lindigs asserted that the City was barred from enforcing its building-permit-fee ordinance by the principles of estoppel and waiver.[8]

The Board's motion to dismiss, which was pending before the district court following the consolidation of the two suits, asserted that the Lindigs had failed to plead sufficient facts "to support an estoppel/waiver claim against a governmental entity." It argued that the doctrine of estoppel generally does not apply against a governmental unit exercising its public or governmental functions except in those cases where justice requires its application. *See City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773 (Tex. 2006); *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex. 1970); *Rolison v. Puckett*, 198 S.W.2d 74, 77 (Tex. 1946).

Reurging this argument on appeal, the City suggests that the trial court lacked jurisdiction because estoppel cannot be invoked to bar its application of its building-permit-fee ordinance. While the Lindigs' pleadings may not establish "an exceptional case in which justice requires estoppel," *see Super Wash*, 198 S.W.3d at 776, the City has not shown that this is a proper basis for a *jurisdictional* challenge, *cf. City of Argyle v. Pierce*, 258 S.W.3d 674, 682 (Tex. App.—Fort Worth 2008, pet. dism'd) ("In essence, the City is arguing that the trial court does not have jurisdiction because the Signers' cause of action is without merit. However, the City has

---

[8] They also argued by their petition for writ of certiorari as alternative grounds for overturning the Board's decision that the City should be estopped from enforcing the ordinance. We do not construe the trial court's order of dismissal as reaching any of the arguments raised in the Lindigs' petition, including their estoppel argument.

21

not shown that this is a proper manner in which to challenge the trial court's jurisdiction."). Because the Lindigs' defensive assertion of estoppel against the claims brought against them by the City is not a "claim" over which the trial court must have subject-matter jurisdiction, we sustain the Lindigs' issue regarding estoppel and waiver.

***Claims Against Dockery and McKinney***

The Lindigs asserted claims against Dockery and McKinney in their individual and official capacities for fraud and civil conspiracy and, by their first amended counter-petition against the City, sought "punitive and exemplary damages against DAVID DOCKERY and PETER MCKINNEY" for gross misconduct. Typically, an official sued in both his official and individual capacities should file a plea to the jurisdiction in defense of the official capacity claims against him and, at the same time, file a motion for summary judgment on official immunity grounds on the individual capacity claims against him. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 845-46 (Tex. 2007). In this case, Dockery and McKinney did neither. Nevertheless, the trial court found that the claims against them in their official capacities were derivatively barred as a result of its determination that it lacked jurisdiction over the Lindigs' claims against the City. *See id.* at 844 (suit against state official in his official capacity actually seeks to impose liability against governmental unit rather than on individual specifically named and is therefore against entity itself). Accordingly, to the extent that we have determined there is subject-matter jurisdiction over certain of the Lindigs' claims against the City, we must reverse the portion of the trial court's order dismissing the claims against Dockery and McKinney. We sustain the Lindigs' issue as to their claims against Dockery and McKinney.

*Claims Against Board Members*

The trial court also dismissed the Lindigs' claims against the members of the Board of Adjustment in their official capacities. Their motion sought dismissal on the sole basis that the Lindigs had asserted identical claims against the Board and the Board Members. The Board Members cite no case, nor have we found one, holding that an individual sued in his official capacity should be dismissed when the governmental entity that he serves remains a party, merely because the claims against the entity and the individual are duplicative. Although the dismissal of the Board would necessarily result in the dismissal of its officers who were sued in their official capacities, *see Hallmark v. City of Fredericksburg*, 94 S.W.3d 703, 708 (Tex. App.—San Antonio 2002, pet. denied), the Board has not been dismissed and remains a party to the suit. Unless and until the Board itself is dismissed, the Board Members sued in their official capacities remain nominal parties. We sustain the Lindigs' issue as to their claims against the Board Members in their official capacities.

## CONCLUSION

We affirm the trial court's order of dismissal for lack of jurisdiction as to the Lindigs' claims for (1) a declaration that the City's building-permit-fee ordinance is unconstitutional; (2) a declaration that the City must refund all residential remodel permit fees illegally procured; and (3) an injunction restraining the City from charging and procuring illegal building permit fees and performing future illegal acts. We reverse the remainder of the order and remand those portions of the cause to the district court for further proceedings.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed in Part, Reversed and Remanded in Part

Filed:   August 11, 2009