

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00060-CV
_____


THE LAMAR CORPORATION, Appellant

V.

THE CITY OF LONGVIEW, TEXAS, Appellee


On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 2006-2381-A


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

The City of Longview Director of Planning (Director) denied the Lamar Corporation's (Lamar) application for work permits on three of its billboards. Lamar appealed the Director's decision to the City of Longview Zoning Board of Adjustment (Board) and, based on the argument that an unconstitutional taking of private property without just compensation would result, requested a variance of a city ordinance requiring removal of the billboards. The Board denied to apply the variance, affirming the Director's decision. Lamar filed a suit for declaratory judgment in the district court. Through resolution of cross motions for summary judgment, the district court affirmed the Board's decision, and this appeal ensued. We affirm the district court's summary judgment on the unconstitutional taking issue. However, we dismiss the remaining appeal for want of jurisdiction.

I.      Factual and Procedural History

        A.      Basic Overview of Issues and Ordinances

Within 1,500 feet of Heritage Plaza Park, Lamar erected and maintained three off-premises outdoor billboard signs. Thereafter, the City of Longview (City) passed an ordinance prohibiting billboards within 1,500 feet of a public park. LONGVIEW, TEX., REV. ORDINANCES ch. 85, art. III, § 85-60 (2003). Lamar's billboards were grandfathered in and were allowed to remain under a "nonconforming sign" status.

Nonconforming signs "need not be reconstructed," but are to be "kept in good repair and maintained in a safe condition." LONGVIEW, TEX., REV. ORDINANCES ch. 85, art. IV, § 85-80 (2003).

2

While no sign can be altered until a permit has been issued, "[n]ormal maintenance, painting, repainting or cleaning of a sign with no structural changes" exempts the need to request a permit. LONGVIEW, TEX., REV. ORDINANCES ch. 85, art. I, §§ 85-4, 85-5 (2003). A nonconforming sign loses its status if it "is dismantled for any purpose other than maintenance operations." LONGVIEW, TEX., REV. ORDINANCES ch. 85, art. IV, § 85-81 (2003).

Without a permit, Lamar dismantled all three signs, repaired or replaced all sign face frames and supporting members connecting the posts, and removed all catwalks on the signs. Additionally, Lamar removed and replaced two supporting posts on one sign and one supporting post on another. The Building Inspection Department sent Lamar a notice of violation, insisting that permits for work on the billboards were required. Lamar applied for the sign permits and described the work as "structure repair." The permits were denied. Finding that Lamar essentially rebuilt its signs, the Director decided Lamar had dismantled its billboard for a reason "other than maintenance operations" and informed Lamar that it was required to take the signs down because it had lost its nonconforming status per section 85-81. Lamar appealed the denial of the work permit to the Board and asked the Board to interpret section 85-81 to determine whether Lamar's signs had in fact lost their status in light of Lamar's argument that it was performing maintenance as required by other city ordinances. Lamar also asked for a variance of section 85-81, arguing that an unconstitutional taking of private property without just compensation would occur if Lamar was required to remove its

3

signs. Lamar was notified of the Board's decision to deny a "request to appeal the interpretation of the sign ordinance."

**B.     Procedural History in District Court**

Thereafter, Lamar filed a petition for declaratory relief in Gregg County District Court to declare: 1) the work done on Lamar's billboards was normal maintenance, which did not require a permit; 2) Lamar's signs did not lose their nonconforming status; and 3) Lamar was not required to remove the signs. In an amended petition, Lamar also asked the trial court to declare section 85-81 unconstitutional as a taking of private property without just compensation if the court determined the ordinance prevented "maintenance operations to the support structures."

The City filed a plea to the jurisdiction which was never heard. It also filed a motion for summary judgment on Lamar's claims for declaratory judgment and summary judgment on the City's counterclaim that Lamar's signs lost their nonconforming status and should be removed. Lamar filed its own motion for summary judgment on its claims, arguing that, since the signs were only dismantled for maintenance operations, they did not lose their nonconforming status. Lamar alternatively argued that, if the City's interpretation of section 85-81 was correct, the ordinance would constitute an unconstitutional taking as applied to it. The trial court denied Lamar's motion for summary judgment, granted the City's motion, affirmed the Board's decision that the signs lost their nonconforming status, and ordered the signs be removed.

The standard for reviewing a traditional motion for summary judgment is well established. *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). We review de novo a summary judgment to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied). A party moving for traditional summary judgment is charged with the burden of establishing that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982). When both sides move for summary judgment, the court is to review both sides' summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## II.     With the Exception of the Unconstitutional Taking Issue, There Is No Subject-Matter Jurisdiction Over This Dispute

Texas law specifies that, because the Board is a quasi-judicial body, the district court sits only as a court of review by writ of certiorari. TEX. LOCAL GOV'T CODE ANN. § 211.011 (Vernon 2008); *City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 249 (Tex. App.—San Antonio 2006, pet. denied); *W. Tex. Water Refiners, Inc. v. S & B Beverage Co.*, 915 S.W.2d 623, 626 (Tex. App.—El Paso 1996, no writ); *Bd. of Adjustment of City of Corpus Christi v. Flores*, 860

5

S.W.2d 622 (Tex. App.—Corpus Christi 1993, writ denied); *see Currey v. Kimple*, 577 S.W.2d 508, 512 (Tex. Civ. App.—Texarkana 1978, writ ref'd n.r.e.) (construing prior statute). This certiorari requirement is an administrative remedy provided by the Texas Local Government Code, which must be exhausted before board decisions may be brought before the courts. *El Dorado Amusement Co.*, 195 S.W.3d at 250. A suit not brought pursuant to statutory provisions is an impermissible collateral attack. *Id.* (dismissing appellant's appeal not brought by writ of certiorari for lack of subject-matter jurisdiction). When properly brought, the only question which may be raised by a petition for writ of certiorari is the legality of the Board's order. TEX. LOCAL GOV'T CODE ANN. § 211.011(a); *City of San Angelo v. Boehme Bakery*, 144 Tex. 281, 190 S.W.2d 67, 69 (1945) (construing prior statute); *El Dorado Amusement Co.*, 195 S.W.3d at 250; *Bd. of Adjustment of City of Piney Point Village v. Amelang*, 737 S.W.2d 405, 406 (Tex. App.—Houston [14th Dist.] 1987, writ denied).

Before we apply the facts of our case to the rule outlined above, we note that one case calls into question the principle that filing a writ of certiorari is a jurisdictional requirement. *Teague v. City of Jacksboro*, 190 S.W.3d 813 (Tex. App.—Fort Worth 2006, pet. denied). *Teague* involved an appeal of a condemnation matter governed by a rule similar to Section 211.011. TEX. LOCAL GOV'T CODE ANN. § 214.0012 (Vernon 2008); *Teague*, 190 S.W.3d at 815. The appeal was effectuated through an action for declaratory and injunctive relief. Relying on an El Paso Court of Appeals decision stating that Section 214.0012 required the filing of a writ of certiorari as a jurisdictional prerequisite, the City of Jacksboro filed a plea to the jurisdiction. *Teague*, 190 S.W.3d

6

at 815; *Martinez v. El Paso*, 169 S.W.3d 488, 492 (Tex. App.—El Paso 2005, pet. denied) (although court dismissed case due to inadequate briefing, it went on to elaborate there was no jurisdiction over administrative appeal where plaintiff filed petition for bill of review instead of petition for writ of certiorari). The court in *Teague* denied the plea, reasoning that the *Martinez* case was in conflict with the Texas Supreme Court's decision in *Davis v. Zoning Board of Adjustment of City of La Porte*, 865 S.W.2d 941 (Tex. 1993). Our review of the overturned decision in *Davis* reveals that a petition for writ of certiorari was filed. *Davis v. Zoning Bd. of Adjustment of City of La Porte*, 853 S.W.2d 650, 651 (Tex. App.—Houston [14th Dist.] 1993), *rev'd*, 865 S.W.2d 941. Moreover, the Texas Supreme Court in *Davis* merely held that the *issuance* of a writ of certiorari is not a jurisdictional requirement.[1] *Davis*, 865 S.W.2d at 942. For these reasons, we disagree with *Teague* and reassert, based on the abundance of other caselaw addressing this issue, that filing a petition for writ of certiorari is necessary in order to exhaust administrative remedies and avoid the review from being considered a collateral attack on the Board's decision.

Lamar did not file a verified petition for writ of certiorari. Instead, Lamar filed petitions for declaratory relief. Based on the language set out in Section 211.011 in which the Legislature intended appeals of Board decisions to be brought through a petition for writ of certiorari, the original and amended petition for declaratory relief and allegations contained therein were

---

[1]*Davis* also reiterated, "The writ of certiorari is the method by which the court conducts its review; its purpose is to require a zoning board of adjustment to forward to the court the record of the particular zoning decision being challenged." 865 S.W.2d at 942.

insufficient to confer jurisdiction on the district court.[2] Therefore, except for the unconstitutional taking issue, we vacate the district court's summary judgment rulings and dismiss the case. *See Hailey v. Siglar*, 194 S.W.3d 74, 82 (Tex. App.—Texarkana 2006, pet. denied).

## III.     Requiring Removal of Lamar's Signs Did Not Amount to an Unconstitutional Taking

### A.     We Have Jurisdiction to Consider the Unconstitutional Taking Issue

A party may obtain judicial review of an administrative action if it adversely affects a vested property right or otherwise violates a constitutional right. *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 172 (Tex. 2004); *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 404 (Tex. 2000); *City of Amarillo v. Hancock*, 150 Tex. 231, 239 S.W.2d 788, 790–91 (1951). Where a constitutional taking issue is brought, it can be considered even though other claims are dismissed for failure to exhaust administrative remedies under Section 211.011 of the Texas Government Code. *Centeno v. City of Alamo Heights*, No. 04-00-00546-CV, 2001 WL 518911, at *3 (Tex. App.—San Antonio May 16, 2001, no pet.) (not designated for publication); *see also Hitchcock v. Bd. of Trustees, Cypress-Fairbanks Indep. Sch. Dist.*, 232 S.W.3d 208, 219 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

---

[2]During oral argument, Lamar's counsel argued the Texas Supreme Court's decision in *Tellez v. City of Socorro* clarified that this Court has subject-matter jurisdiction over this dispute. 226 S.W.3d 413 (Tex. 2007). It did not. *Tellez* merely stands for the proposition that dismissal of suit is not required where a board is not named as a party and that pleading allegations of illegality is not a jurisdictional requirement. *Id.* at 414. In fact, a review of the case below demonstrates that a proper petition for writ of certiorari was filed in *Tellez*. *See Tellez v. City of Socorro*, 164 S.W.3d 823, 826 (Tex. App.—El Paso 2005), *rev'd*, 226 S.W.3d 413.

In its motion for summary judgment, Lamar argued that section 85-81, providing for termination of nonconforming signs, constituted an unconstitutional taking of property without just compensation as prohibited under Article I, Section 17 of the Texas Constitution. Article I, Section 17 requires payment of adequate compensation when private property is taken for public use. However, since all property is held subject to the valid exercise of the police power, a city is not required to compensate for losses occasioned by the proper and reasonable exercise of that power. *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804 (Tex. 1984); *Lombardo v. City of Dallas*, 124 Tex. 1, 73 S.W.2d 475, 478–79 (1934).

**B.     Removal of Lamar's Billboards per City Ordinance Is Not an Unconstitutional Taking**

A city may enact reasonable regulations to promote the health, safety, and general welfare of its people. *Turtle Rock Corp.*, 680 S.W.2d at 805; *Lombardo*, 73 S.W.2d at 478. The question of whether a police power regulation is proper or whether it constitutes a compensable taking is a question of law. *Turtle Rock Corp.*, 680 S.W.2d at 804; *Hunt v. City of San Antonio*, 462 S.W.2d 536, 539 (Tex. 1971). The concept of public welfare has a broad range. *Turtle Rock Corp.*, 680 S.W.2d at 805. If reasonable minds may differ as to whether a particular zoning ordinance has a substantial relationship to the public health, safety, morals, or general welfare, the ordinance must stand as a valid exercise of the city's police power. *Id.*; *Hunt*, 462 S.W.2d at 539. A city ordinance is presumed to be valid, and an "extraordinary burden" rests on one attacking a city ordinance. *Turtle Rock Corp.*, 680 S.W.2d at 805; *Hunt*, 462 S.W.2d at 539.

9

Although there is no bright line for distinguishing between an exercise of the police power which does constitute a taking and one which does not, there are two related requirements taken into consideration when assessing validity of an exercise of police power. *Turtle Rock Corp.*, 680 S.W.2d at 804; *Hunt*, 462 S.W.2d at 539. First, the regulation must be adopted to accomplish a legitimate goal; it must be "substantially related" to the health, safety, or general welfare of the people. *Turtle Rock Corp.*, 680 S.W.2d at 805; *Lombardo*, 73 S.W.2d at 479. Second, the regulation must be reasonable; it cannot be arbitrary. *Turtle Rock Corp.*, 680 S.W.2d at 805; *City of Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972). In other words, it must "substantially" advance the legitimate goals of the city. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933–34 (Tex. 1998).

The purpose of the City's sign ordinance is to "promote the health, safety, and welfare" of the City's citizens by

> balanc[ing] the right of individuals and businesses to identify themselves and convey messages with the right of the public to be protected against the unrestricted proliferation of signs. It is further intended to encourage signs which are well designed; which preserve locally recognized values of community appearance; which protect public investment in, and the character of, public thoroughfares; which aid in the attraction of shoppers and other visitors who are important to the economy of the city; [and] which reduce hazards to motorists and pedestrians traveling on the public roadways . . . .

LONGVIEW, TEX., REV. ORDINANCES ch. 85, art. I, § 85-1 (2003). Specifically, the nonconforming sign ordinance is designed to: 1) keep unmaintained signs from injuring motorists and pedestrians; 2) attract business to the City; and 3) preserve the beautification of the City's residential areas, parks, forests, and playgrounds by preventing proliferation of signs in those areas. As such, the

10

nonconforming sign ordinance is substantially related to the public heath, safety, and general welfare of the City's citizens. The first prong under *Turtle Rock Corp.* is met. *See* 680 S.W.2d at 805.

Municipal zoning ordinances requiring the termination of nonconforming uses under reasonable conditions are within the scope of municipal police power. *Murmur Corp. v. Bd. of Adjustment of City of Dallas*, 718 S.W.2d 790, 794 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Property owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made. *Id.* There are strong policy arguments and demonstrable public need for the fair and reasonable termination of nonconforming property uses. *Id.* These uses most often do not disappear, but tend to thrive in monopolistic positions in the community. *Id.* To prevent the indefinite existence of nonconforming signs, it is reasonable to require a nonconforming sign's termination if it is rebuilt or dismantled for purposes other than maintenance. The reasonable termination of Lamar's nonconforming signs through section 85-81 accomplishes the goals of the sign ordinance outlined above, and is therefore not arbitrary. The second prong under *Turtle Rock Corp.* is also met. *See* 680 S.W.2d at 805.[3]

---

[3]Lamar cites our case of *Adcock v. King* in support of its position. 520 S.W.2d 418 (Tex. Civ. App.—Texarkana 1975, no writ). The *Adcock* decision was based on a Texas Supreme Court opinion, *City of Corpus Christi v. Allen*, 152 Tex. 137, 254 S.W.2d 795 (1953). We believe the *Adcock* opinion incorrectly applied the *Allen* case. In *Allen*, a salvage company which had been operating for several years was rezoned. Based on the new zoning ordinance, the city attempted to require the business to move to another location. The Texas Supreme Court stated:

With respect to zoning ordinances which attempt a retroactive effect, as petitioner's ordinance does here, it is said: "As a general rule, the restrictions of a zoning ordinance or regulation may not be made retroactive. Such regulations must relate

11

The two-pronged test in *Turtle Rock Corp.* does not end the inquiry. *Mayhew*, 964 S.W.2d at 935. A regulatory taking can also occur when governmental agencies impose restrictions that either deny landowners all economically viable use of their property or unreasonably interfere with their rights to enjoy and use their property. *Id.* A restriction denies all economically viable use of a property only where it renders the property valueless. *Id.* (citing *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994)). Lamar asserts that a construction of this ordinance in the City's favor would result in unconstitutional taking as applied in this instance. Lamar did not present any summary judgment evidence demonstrating that its property would be rendered valueless if removal of the billboards was required. Determining whether the government has unreasonably interfered with a landowner's right to use and enjoy property requires a consideration of two factors: the economic impact of the

> to the future rather than to existing buildings and uses of land, and ordinarily they may not operate to remove existing buildings and uses not in conformity with the restrictions applicable to the district, at least where such buildings and uses are not nuisances and their removal is not justified as promoting the public health, morals, safety, or welfare."

*Id.* (citations omitted). In *Adcock*, there was no issue of retroactive effect. The salvage yard had been in operation for some time when it was annexed into the city and constituted a nonconforming use. However, the salvage yard continued to operate for several years when a fire occurred. The city ordinance allowed the salvage yard to apply for a building permit if rebuilding costs did not exceed sixty percent of the value. When the city denied the permit, suit was filed alleging an unconstitutional taking. This Court found that, since the salvage yard was not a nuisance or a public health, safety, or welfare concern, the ordinance operated as an unconstitutional taking. In this, we believe that opinion was in error. As opposed to *Allen*, in *Adcock*, there was no question of retroactive application. The ordinance in question had been in effect for years and the salvage yard was a nonconforming use which was allowed to continue until it burned, which brought into play application of the ordinance requiring approval to rebuild the nonconforming use. For these reasons, we do not believe *Adcock* is controlling authority in this case.

12

regulation and the extent to which the regulation interferes with distinct investment-backed expectations. *Id.* Since Lamar failed to raise any allegations or present any evidence on these issues, the City may rely on the presumed constitutionality of the ordinance. *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 475 n.12 (Tex. 1997) (noting statutes should be afforded presumption of constitutionality); *Shelby Operators Co. v. City of Waskom*, 964 S.W.2d 75, 82 (Tex. App.—Texarkana 1997, pet. denied). Therefore, we find that no taking of private property without just compensation occurred because Lamar has failed to overcome the presumption of constitutionality of the ordinance.[4] Because the City reasonably exercised its police power, it is not required to make compensation for Lamar's losses, if any. *See Turtle Rock Corp.*, 680 S.W.2d at 804.

## IV.    Conclusion

We affirm the district court's finding that Longview City Ordinance section 85-81 does not constitute a taking of Lamar's private property without just compensation. Due to Lamar's failure

---

[4]We also note that termination of the nonconforming use was not based on action by the City, but rather, was based on Lamar's actions to perform work on its billboards.

to exhaust administrative remedies by not bringing this suit in accordance with Section 211.011 of the Texas Government Code and instead asserting a collateral attack on the Board's decision, we dismiss the district court's judgment on all other causes for want of jurisdiction.


                                        Jack Carter
                                        Justice

Date Submitted:      October 29, 2008
Date Decided:        November 21, 2008